**UNITED STATES BANKRUPTCY COURT**　　　　**FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re:　　　　　　　　　　　　　　　　　　Chapter 11

AMR CORPORATION, *et al.*,　　　　　　　　Case No. 11-15463 (SHL)

　　　　　　　　　　　　Debtors.　　　　　(Jointly Administered)


-----------------------------------------------------------------x
CAROLYN FJORD, *et al.*,
　　　　　　　　　　　　Plaintiffs,


　　　　　v.　　　　　　　　　　　　　　Adv. Pro. No. 13-01392 (SHL)


AMR CORPORATION, AMERICAN AIRLINES,
US AIRWAYS GROUP INC. and
US AIRWAYS, INC.,
　　　　　　　　　　　　Defendants,

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,
　　　　　　　　　　　　As Intervenor.
-----------------------------------------------------------------x


## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**LATHAM & WATKINS LLP**
*Counsel for Defendants US Airways/*
　*American Airlines Group*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
By:　　Daniel M. Wall, Esq.
　　　　Alfred C. Pfeiffer, Jr., Esq.
　　　　Sadik Huseny, Esq.

**WEIL, GOTSHAL & MANGES LLP**
*Counsel for Defendants and Reorganized Debtors*
*AMR Corporation and American Airlines*
767 Fifth Avenue
New York, NY 10153
By:      Stephen Karotkin, Esq.
         Alfredo R. Perez, Esq.
         Stephen A. Youngman, Esq.
         Richard Mullen, Esq.

**SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP**
*Counsel for Intervenor the Official Committee of Unsecured*
*Creditors*
Four Times Square
New York, New York 10036
By:      Jay M. Goffman, Esq.
         James A. Keyte, Esq.
         Kenneth B. Schwartz, Esq.

         -and-

155 North Wacker Drive
Chicago, Illinois 60606
By:      John Wm. Butler, Jr., Esq.
         Albert L. Hogan III, Esq.
         John K. Lyons, Esq.

**ALIOTO LAW FIRM**
*Counsel for Clayton Plaintiffs*
One Sansome Street, 35th Floor
San Francisco, CA 94104
By:      Joseph M. Alioto, Esq.

**MESSINA LAW FIRM, P.C.**
*Counsel for Clayton Plaintiffs*
961 Holmdel Road
Holmdel, NJ 07733
By:      Gil D. Messina, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Plaintiffs' motion to amend the complaint in the above-captioned civil antitrust action that challenges the merger between American Airlines and US Airways. (the "Motion") (ECF No. 91).[1]

The Motion proposes a number of changes. First, the Plaintiffs seek to add factual allegations, some that relate to events before consummation of the merger in December 2013 while others involve subsequent events. *See generally* Proposed First Amended Complaint (the "PAC") (ECF No. 91 Ex. 4). Second, the Motion addresses the Plaintiffs' proposed relief by seeking to: a) add a new claim for treble money damages under Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15(a)) ( the "Clayton Act"); b) add a request for a preliminary injunction requiring the defendants to hold their assets separate during the pendency of the case; and c) modify the language regarding the divestiture and associated declaratory relief sought under Section 16 of the Clayton Act (15 U.S.C. § 26). *See* PAC at 41, Prayer for Relief A-D. Third and finally, the Plaintiffs seek to add a demand for a jury trial. PAC at 1, 43.

Defendants, AMR Corporation and US Airways, and the Official Committee of Unsecured Creditors as intervenors (jointly, the "Defendants") jointly oppose the Motion (the "Opp.") (ECF No. 93). While Defendants do not object to the proposed changes regarding new factual allegations and divestiture, they strenuously object to the remaining relief. *See* Feb. 13 Hr'g. Tr. at 44:19-23 (ECF No. 100). The Defendants protest that the Plaintiffs have already waived their right to a jury trial, have failed to state a claim for damages, and are not entitled to the requested "hold separate" injunction.

---

[1]    Record citations to the American Airlines main bankruptcy case (Case No. 11-15463) are identified as "Main ECF No." while citations to the Adversary Proceeding record (Case No. 13-01392) are reflected as "ECF No."

For the reasons stated below, the Court grants the Motion in part and denies it in part. More specifically, the Court permits the uncontested amendments that assert new factual allegations and revise the proposed divestiture relief. But the Court denies the rest of the Motion. While the Court concludes that Plaintiffs have not waived their right to demand a jury, the proposed amended complaint fails to assert a sufficient basis for treble damages suffered by these individual plaintiffs. As the Plaintiffs' jury demand rests upon their proposed new treble damages claim, the request to add a jury demand must be denied as well. Finally, the Court considers the request for a "hold separate" injunction to have been withdrawn based on the statements of Plaintiffs' counsel at the hearing.

## BACKGROUND

### I.    History of Debtors' Bankruptcy

The Debtors commenced their Chapter 11 cases in late November 2011. More than a year later, the Debtors negotiated a merger agreement with US Airways to serve as the centerpiece of their reorganization. This Court approved the merger agreement between the Debtors and US Airways in early May 2013. *See* Order Approving Merger (Main ECF No. 8096). Despite this Court's blessing, it was understood that regulatory approval was necessary for the merger to go forward and such approval was not expected until after confirmation of a plan of reorganization in the late summer of 2013. The Debtors subsequently filed a Second Amended Joint Chapter 11 Plan (the "Plan) and accompanying disclosure statement (the "Disclosure Statement"), which relied on the merger between the Debtors and US Airways. (Main ECF Nos. 8590 and 8591). By order in early June 2013, the Court approved the Disclosure Statement, and scheduled a hearing on confirmation of the Plan for the middle of

2

August. *See* Order Approving Disclosure Statement  (Main ECF No. 8614).  The deadline to file

objections to confirmation was the end of July.  *Id.* at 13.

   In early July, the Plaintiffs sued US Airways in the Northern District of California to

enjoin the merger.  *See Fjord v. US Airways Group, Inc.*, 13-cv-03041-SBA (N.D. Cal. July 2,

2013).[2]  At the end of that month, the Plaintiffs objected to confirmation of the Plan.  *See*

Objection to Confirmation of Plan.   (Main ECF No. 9356).  Even though they did not object to

the Court's earlier approval of the merger, the Plaintiffs' objection argued that the proposed

merger violated antitrust laws.  *Id.*  In the objection, the Plaintiffs also contended that these

antitrust concerns should be addressed in an Article III court, rather than in bankruptcy court.  *Id.*

at 5, 9.

   One week after their objection to confirmation, the Plaintiffs filed this adversary

proceeding against US Airways, AMR Corporation, and American Airlines.   *See* Compl. at 25

(ECF No. 1).  The Complaint sought to enjoin the proposed merger for violating Section 7 of the

Clayton Antitrust Act while also seeking costs including attorney's fees.  Compl. at 25, Prayer

for Relief C, D.  Lastly, the Complaint asked for "such other and further relief to which

[Plaintiffs] may be entitled and which the Court finds to be just and appropriate."  Compl. at 26,

Prayer for Relief E.

---

[2]      This Court subsequently found that filing the California action violated the automatic stay and was *void ab initio*:

> [T]he action filed by the Clayton Act plaintiffs in California . . . was filed in violation of the automatic stay imposed by this case, and the Clayton Act plaintiffs did not file a motion in advance seeking to lift the stay so as to permit that filing.  As a result, that action is void ab initio as to the debtors.  The Court rejects the notion that the filing of the California action was somehow inadvertent, as these same lawyers have engaged in similar conduct in the past as discussed by Judge Gerber in his decision in *Adelphia Comm'ns. Corp.* (345 B.R. 69 at 73, Bankr. S.D.N.Y. 2006).

*See* Sept. 12, 2013 Hr'g. Tr. at  42:12-19, 43:1-6 (ECF No. 43).

Two days before the August confirmation hearing, the United States Department of Justice (the "DOJ") filed an action in the United States District Court for the District of Columbia alleging that the planned merger would substantially lessen competition and thus would violate Section 7 of the Clayton Act (the "DOJ Action"). The DOJ Action was joined by several states and was scheduled for a trial in late November 2013. At the August confirmation hearing, this Court requested additional briefing from the parties regarding the impact of the DOJ Action on confirmation and the future of these Chapter 11 cases. *See* Aug. 15 Hr'g Tr. at 12:8-23 (ECF No. 28). At that hearing, the Plaintiffs' counsel also indicated their intent to proceed with their Clayton Act claims in this adversary proceeding, independent of the DOJ Action. *Id.* at 57:11-23. In late August, the Plaintiffs filed a motion to withdraw the reference to the Bankruptcy Court and transfer this case to the District Court. *See* Motion to Withdraw the Reference (ECF No. 29).

At a subsequent hearing on confirmation in September, the Court overruled the Plaintiffs' confirmation objection and confirmed the Plan. On that same date, the parties discussed the status of this adversary proceeding. *See generally* Sept. 12 Hr'g. Tr. at 80-106 (ECF No. 43). At that time, Plaintiffs' counsel represented to the Court that they preferred to try their antitrust case in the Bankruptcy Court, rather than to move forward with their pending motion to withdraw the reference in the District Court. *Id.* at 81:13-15 ("[C]ertainly it would be my preference to try the case before Your Honor"); *Id.* at 84:7 ("[W]e will withdraw [the motion to withdraw the reference]."). Plaintiffs in fact withdrew that motion.

Two months later, the Debtors and US Airways publicly announced a settlement of the DOJ Action. The Settlement generally calls for the divestiture of various slots and gates at several airports throughout the country. *See* Motion for Approval of Settlement ¶16 (Main ECF

No. 10610). The terms of the Settlement resolved "all claims asserted in the Complaint filed in

the DOJ Action." *Id.*  The Debtors filed motions seeking the Court's approval of the settlement

and entry of an order permitting immediate consummation of the merger between AMR and US

Airways.  *See* Motion for Entry of Order Approving Settlement (Main ECF No. 10610) (filed

Nov. 12, 2013); Motion for Entry of Order Regarding Consummation of Merger (ECF No. 47)

(filed Nov. 12, 2013).  The sole objection to the Debtors' motions was filed by the Plaintiffs on

November 21, 2013, and it took the form of a motion for a temporary restraining order seeking to

block the merger (the "TRO Motion") (ECF No. 57).  The Debtors and the Committee filed a

joint reply brief and opposition to the TRO Motion on Saturday, November 23, 2013.  (ECF No.

64).  The Court held a hearing on both the Debtors' motion to consummate the merger and the

Plaintiffs' TRO Motion on November 25, 2013.  At that hearing, the Court asked Plaintiffs'

counsel to elaborate on the identities of the plaintiffs and how they would be harmed by the

merger.  Nov. 25 Hr'g. Tr. at 35:21-22, 36:16-17 (ECF No. 79).

      On November 27, 2013, the Court issued a memorandum of decision, denying the

Plaintiffs' request for a TRO, approving the settlement of the DOJ Action, and permitting

consummation of the merger (the "TRO Opinion").  *See Fjord v. AMR Corp. (In re AMR Corp.)*

502 B.R. 23 (Bankr. S.D.N.Y. 2013).  The TRO Opinion articulated, among other things, the

Court's finding that the Plaintiffs did not demonstrate a substantial likelihood of success on the

merits of their underlying antitrust claims and highlighted examples of the deficiencies in the

Plaintiffs' pleadings.  *Id.* at 33-38.  These deficiencies included the lack of evidence pertaining to

the plaintiffs' relationship with the airline industry, (*id.* at 33), and the failure to articulate the

anticipated harm to these plaintiffs upon closure of the merger.  *Id.* at 36.

## II.    The Current Motion

This Motion came before the Court for a hearing on February 13, 2014.  At the hearing, the dispute between the parties narrowed.  On the one hand, the Defendants stated that they did not oppose amending the complaint to add new factual allegations or to add additional language regarding divestiture relief.  *See* Feb. 13 Hr'g. Tr. at 44:16-23.  On the other hand, the Plaintiffs clarified that they were not seeking preliminary injunctive relief to require the Defendants to hold their assets separate before trial, notwithstanding the language of the proposed amended complaint.  *Id*. at 35:11-38:11, 45:7-13.  At the conclusion of the hearing, therefore, the only issues that remained were whether the Plaintiffs may properly add a jury demand and a claim for treble damages.  After the hearing, the Court directed the parties to submit additional authority regarding whether the plaintiffs could have brought a claim for damages prior to the merger, and whether failure to do so would impute a waiver of a jury demand.  *Id*. at 50:9-25, 51:1-13.

## DISCUSSION

## I.    The Right to a Jury Trial

The Seventh Amendment to the U.S. Constitution preserves the right to a jury trial for "suits at common law, where the value in controversy shall exceed twenty dollars . . . . "  U.S. Const. amend. VII.  The Supreme Court has interpreted the term "suits at common law" to mean "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera v. Nordberg* 492 U.S. 33 at 41 (1989); *Eberhard v. Marcu,* 530 F.3d 122, 135 (2d Cir. 2008); *see also Texas v. Penguin Group (USA) Inc.,* 2013 U.S. Dist. LEXIS 58925, at *17 (S.D.N.Y. Apr. 24, 2013).   "A jury right also attaches to actions enforcing statutory rights, 'if the statute creates legal rights and remedies, enforceable in an action for damages in the

ordinary courts of law.'" *Penguin Group,* 2013 U.S. Dist. LEXIS 58925, at *18 (quoting *Curtis v. Lother,* 415 U.S. 189, 184 (1974)).  Thus, statutory relief that is equitable in nature is tried to the court, whereas a claim for recovery of money damages under a statute is tried to a jury.  *See, e.g., Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047-48 (2d Cir. 1992) (distinguishing a Title VII claim that provides equitable relief as appropriately tried to the court, versus a claim under Executive Law § 296 that provides for recovery of money damages should be made to the jury).

Applying these principles to antitrust laws, actions for injunctive relief under Section 16 of the Clayton Act are equitable in nature and create no right to a trial by jury.  In relevant part, Section 16 provides: "any person shall be entitled to sue for and have injunctive relief . . . when and under the same principles for injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . .  and showing that the danger of irreparable loss or damage is immediate a preliminary injunction may issue." 15 U.S.C. §26.  Such injunctive relief does not trigger a right to a jury.  *In re Tech. Licensing Corp.,* 423 F.3d 1286, 1287 (Fed. Cir. 2005) (noting that "there is no right to a jury trial when the only remedy sought . . . is an injunction"); *see also Ross v. Bank of AM., N.A. (In re Currency Conversion Fee Antitrust Litigation),* 2009 U.S. Dist. LEXIS 6747, at *14 (S.D.N.Y. Jan. 21, 2009) ("if the only relief sought is equitable, such as an injunction or specific performance . . . neither the party seeking that relief nor the party opposing it is entitled to a jury trial.") (citations omitted).

But a claim for treble damages under Section 4 of the Clayton Act falls within the ambit of the Seventh Amendment's right to a jury trial.  Section 4 of the Clayton Act provides: ". . . any person who shall be injured . . . by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by

7

him sustained, and the cost of suit, including a reasonable attorney's fee . . . " 15 U.S.C. §15.

Such a damages claim is triable to a jury, subject to the limitations and procedural requirements

of the Federal Rules of Civil Procedure. *Ring v. Spina*, 166 F.2d 546, 550 (2d Cir. 1948) ("such

a claim [for damages for violation of the Antitrust Act], it is well settled, is triable by jury on

timely demand of a party.")

Where a party has the right to a jury, a demand must be timely made. A demand for a

jury trial must be made "no later than 14 days after the last pleading directed to the issue is

served." Fed. R. Civ. P. 38(b). Failure to do so results in a waiver of a jury trial. Fed. R. Civ. P.

38(d). To identify which pleading is the "last pleading directed to the issue" for purposes of

Rule 38, courts will look at the most recent pleading that contests an issue, "generally an answer

to a complaint or a reply to a counterclaim." *Mt. Hawley Ins. Co. v. Van Cortlandt Village LLC*,

2010 U.S. Dist. LEXIS 54442, at *7 (S.D.N.Y. June 1, 2010) (citing *McCarthy v. Bronson*, 906

F.2d 835, 840 (2d Cir. 1990)). An amended complaint also may revive the right to timely

request a jury trial, "but only when new issues are presented." *Lastra v. Weil, Gotshal &*

*Manges LLP*, 2005 U.S. Dist. LEXIS 3630, at *4 (S.D.N.Y. Mar. 8, 2005). A court should

consider the evidence offered and the legal theories pursued as pertinent factors, to properly

conclude that the amendment changes the "character of the suit" or the "ultimate issue for

decision." *Rosen v. Dick*, 639 F.2d 82, 94, 96 (2d Cir. 1980).

It is well settled that an amendment does not revive a right to demand a jury trial if that

right existed—and was waived—based on issues framed by an original complaint. *American*

*Home Prods. Corp. v. Johnson & Johnson*, 111 F.R.D. 448, 450 (S.D.N.Y. 1986) (citing *State*

*Mut. Life Assur. Co. of Am. v. Arthur Anderson & Co.*, 581 F.2d 1045, 1049 (2d Cir. 1978)). In

*American Home Products*, the defendant's original counterclaim sought injunctive relief and

"such other and further relief as the Court may deem just and proper." *Id.* at 453. In finding

that defendants waived their right to demand a jury, the court reasoned that they could have

made a jury demand at the outset of the case, chose not to do so, and then attempted to revive

that right by adding a counterclaim for damages. *Id.*

When examining waiver under Rule 38, courts must be careful not to elevate form over

substance. As the Second Circuit has noted:

> In determining whether a party has waived his right to a jury trial,
> we have distinguished between acts—or failures to act—prior to
> the time set by Rule 38(b) for the making of a demand, and failures
> to make a timely demand in accordance with Rule 38. In effect we
> have applied a presumption against waiver in the former
> circumstances and a presumption in favor of waiver in the latter.
> *Compare National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d
> 255, 258 (2d Cir. 1977) (no waiver by signing of a contract having
> a jury waiver clause buried in the fine print), *and Heyman v. Kline*,
> 456 F.2d 123 (2d Cir.) (no waiver of right to have counterclaim
> tried to a jury by mere failure to assert right at a pretrial conference
> that preceded service of counterclaim), *cert. denied*, 409 U.S. 847
> (1972), *with Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973)
> (waiver by failure to follow Rule 38 after removal of action from
> state court), *and Noonan v. Cunard Steamship Co.*, 375 F.2d 69
> (2d Cir. 1967) (waiver by inadvertent failure to follow Rule 38).

*Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797 n.4 (2d Cir. 1983).

Where a timely jury demand has been made, Rule 39(a)(1) provides that a party may

nonetheless waive that right in two circumstances: when the parties or their attorneys file a

stipulation to a nonjury trial or when they so stipulate on the record. Fed. R. Civ. P. 39(a). *See*

*Tray-Wrap, Inc. v. Six L.'s Packing Co.,* 984 F.2d 65, 68 (2d Cir. 1993). In applying Rule

39(a)(1), the Second Circuit has adhered to the principle "a waiver is not lightly to be inferred,"

and that "the conduct said to constitute a waiver must be clear and unequivocal." *Id. See also*

*Penguin Group*, 2013 U.S. Dist. LEXIS 58925, at *20. The burden of proof rests with the party

seeking to enforce the waiver. *Id..* Oral and written consent to a non-jury trial has been found to

9

constitute a waiver under Rule 39(a), but only when the plaintiff "clearly sought to waive his jury demand." *See, e.g., Kahn v. GMC,* 865 F. Supp. 210, 212 (S.D.N.Y. 1994).[3] *See also Tray-Wrap, Inc.* at 68 (finding that the words "before your Honor" in a written stipulation" did not constitute a waiver, nor did certain statements made during off-the-record conference calls); *but see Pierce v. ABC Carpet Co.,* 2013 U.S. Dist. LEXIS 82077, at *7, 9, 11 (S.D.N.Y. June 11, 2013) (finding that plaintiff's submission of a written waiver of jury trial subsequent to his timely demand under Rule 38 did constitute a waiver).

Where a jury trial has not been timely demanded, Rule 39(b) affords the court discretion "on motion, [to] order a jury trial on any issue for which a jury might have been demanded." *See Ptaszek v. YMCA Ret. Fund,* 2004 U.S. Dist. LEXIS 16880, at *4 (S.D.N.Y. Aug. 23, 2004). To clear the hurdle of Rule 39(b)'s discretionary provision, a party will be excused from its failure to comply with Rule 38 only upon a "showing of exceptional circumstances." *Janetos v. Home Depot U.S.A., Inc.* 2012 U.S. Dist. LEXIS 137595, at *9 (E.D.N.Y. Sept. 25, 2012) (citing *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 70-71 (2d Cir. 1997)). The party must demonstrate that failure to make a proper jury demand was "beyond mere inadvertence." *See Westchester Day Sch. v. Vill. Of Mamaroneck*, 504 F.3d 338, 356 (2d Cir. 2007); (citing *Noonan,* 375 F.2d at 70 (mere inadvertence in failing to make a timely jury demand is not sufficient for the court to exercise its discretion under Rule 39(b), and thus the waiver was valid)).

---

[3]      The facts in *Kahn* illustrate the kind of unusual circumstances where waiver under Rule 39 is found:

> The record shows that Kahn knew exactly what he was doing . . . Kahn's letters to Judge Leval, and the statements in deposition and during the pretrial conference permit no "reasonable presumption against waiver." Kahn clearly sought to waive his jury demand by requesting a bench trial before Judge Leval, GM agreed to the waiver, and the record contains ample evidence of the waiver. These facts, in my view, satisfy the requirement of Rule 39(a) that jury demand waivers be made by written or oral stipulation entered in the record. Kahn waived his jury demand both in writing and orally.

*Kahn* at 213.

In arguing for waiver, Defendants here rely upon language in the original complaint

requesting "such other relief as the court may deem just and proper."  Opp. ¶36.  Defendants

construe such language as seeking money damages and thus triggering Plaintiffs' obligation to

request a jury at that time.  *Id.*  Additionally, Defendants point to certain allegations in the

original complaint as giving rise to a claim for damages, such that the right to demand a jury

vested as of the filing of that pleading.  *Id.* at ¶¶ 9, 36; s*ee also* Feb. 13 Hr'g. Tr. at 47:7-8,

47:13-15, 48:18-24.  Those allegations are:

> Shortly after the announcement of the US Air-American merger,
> prices were increased by $4 to $10 roundtrip on domestic flights
> throughout the United States by Delta, United, American, and US
> Airways.  Southwest matched the increase on a limited scale.

Compl. ¶ 107; Prop. Am. Compl. ¶ 120.

But there is no waiver here under Rule 38.  Defendants' position presupposes that

Plaintiffs were permitted to bring a treble damages claim prior to consummation of the merger.

Stated another way, could Plaintiffs have brought a claim for damages under Section 4 of the

Clayton Act prior to the merger?  In their letter to the Court, Defendants suggest that "there is

very little authority, and no specific and clear controlling law, on this issue . . . ."  Def.'s Letter

Regarding Relevant Authority at 1 (ECF No. 97).  But the language of the statute and existing

case law very strongly suggest the answer is no.  As always, the Court starts with the language of

the statute, which provides in relevant part:

> (a) . . . any person who shall be injured in his business or property
> by reason of anything forbidden in the antitrust laws may sue
> therefor in any district court of the United States in the district in
> which the defendant resides or is found or has an agent, without
> respect to the amount in controversy, and shall recover threefold
> the damages by him sustained, and the cost of suit, including a
> reasonable attorney's fee.

15 U.S.C. § 15(a).

11

Thus, Section 4 of the Clayton Act provides damages to plaintiffs that have been "sustained," which by its own terms provides retrospective relief. But the original complaint invoked only Section 16, which seeks to enjoin behavior that "threaten[s] loss or damage." Where a group of plaintiffs seek an injunction arguing that a proposed merger will cause them harm, it strains logic to argue that they also must present a claim for damages sustained even before the merger has taken place.

The case law recognizes the difference between these kinds of relief. As the First Circuit has observed:

> Section 4 [of the Clayton Act] is retrospective in orientation; it seeks to remedy the past by penalizing wrongdoers with treble damages . . . . Accordingly, § 4 "makes awards available only to *injured parties* and measures the award by a multiple of the injury actually proved" . . . . By contrast, § 16 is prospective and prophylactic, allowing injunctive relief upon demonstration of "a significant threat of injury from an impending violation of the antitrust laws" . . . . As we emphasized in our earlier discussion of plaintiff's "standing," the district court cannot require plaintiff to show *fact* of injury . . . in an action under § 16.

*Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 412 (1st Cir. 1985) (emphasis in original) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477 (1979); *Zenith Radio Corp. v. Hazeltine*, 395 U.S. 100 (1969)). Indeed, the Second Circuit has recognized that a cause of action under the antitrust laws accrues when there is an injury to competition. *Higgins v. New York Stock Exchange*, 942 F.2d 829, 832 (2d Cir. 1991) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.* 401 U.S. 321 (1971)). Thus, it is hard to fathom how a Section 4 damages claim could accrue before the underlying conduct that allegedly violates Section 7 takes place. The alleged anti-competitive conduct here is the "[acquisition of] the whole or any part of any of the stock" under the proposed merger. *See* 15 U.S.C. § 18. Plaintiffs' damages claim under Section

12

4 thus could only have accrued upon the closing of the merger. *Id.*; *see also* Feb. 13, Hr'g. Tr. at

76:10-15.[4] It must follow that the jury demand was created only when the treble damages claim

came into being after the consummation of the merger.

    None of the authority cited by Defendants compels a different result. The only Second

Circuit case cited by the Defendants was *GAF Corp. v. Circle Floor Co.,* 463 F.2d 752 (2d Cir.

1972), which was silent on the issue of whether a plaintiff is foreclosed from seeking damages

for a violation of Section 7 of the Clayton Act before a merger is completed. But the Ninth

Circuit addressed this issue in *Helix Milling Co. v. Terminal Flour Mills Co.,* 523 F.2d 1317 (9th

Cir. 1975). In that case, the acquisition never took place. The defendants argued that a claim for

damages pursuant to Section 7 of the Clayton Act could not be brought in the fact of an

uncompleted acquisition. *Id.* at 1323. Affirming the grant of defendants' summary judgment

motion, the court reasoned that "[t]he language of Section 7 speaks in terms of a completed

acquisition rather than an attempted merger. We can find no compelling reason for extending the

reach of Section 7 to an uncompleted merger." *Id.*[5]

    While the Defendants rely on the catch-all language in the prayer for relief, it does not

change the result here. As a threshold matter, the catch-all language must be understood in the

context of the original complaint. That pleading is styled as a "Complaint For Injunctive Relief

Against Violation of Section 7 of the Clayton Antitrust Act." Orig. Compl. at 1. The prayer for

---

[4]    Defendants' reliance on the original complaint's passing reference to increased prices is unavailing. It is
best understood as background to the original complaint's contention that the merger should be enjoined because of
the threat of injury. *See* Feb. 13, Hr'g. Tr. at 76:10-15 (Plaintiffs' counsel stating that "[Defendant's counsel]
mentioned that there were acts that took place prior to the merger, in which damages could have been claimed . . .
The announcement that these companies acted in lock step is evidence that this is what can be anticipated in a
completed merger, subsequently . . . It is not a claim in and of itself.")

[5]    The other cases cited by Defendants similarly do not squarely address whether a plaintiff is foreclosed from
bringing a Section 4 damages claim prior to the consummation of a merger or any other allegedly illegal anti-
competitive transaction. *See generally Nelson v. Pacific Southwest Airlines,* 399 F. Supp. 1025, 1027-29 (S.D. Cal.
1975); *McTamney v. Stolt Tankers & Terminals (Holdings), S.A.* 678 F. Supp. 118, 119-21 (E.D. Pa. 1987); *Mr.
Frank, Inc. v. Waste Management, Inc.*, 591 F. Supp. 859, 865, 867 (N.D. Ill. 1984).

relief clearly lays out a variety of equitable remedies sought, as well as attorney's fees.  *See id.*

Prayer for Relief, 25, 26.  But despite its extensive scope, it notably does not seek damages.  In

fact, it does not even mention Section 4 of the Clayton Act.[6]

Defendants cite to similar catch-all language in the Second Circuit's decision in

*Gulbenkian v. Gulbenkian*, 147 F.2d 173 (2d Cir. 1945).  But that case does not support their

argument.  In *Gulbenkian*, the complaint sought specific performance of a contract and "such

other relief as the court may deem proper." *Id.* at 176.  The Second Circuit affirmed the district

court's denial of specific performance but overturned its dismissal of the case, concluding that

there was enough evidence presented at trial to sustain a damages award.  The heart of the

Circuit's ruling rested upon the notion that the complaint was equitable in nature and that any

damages were incident to the equitable relief, rather than a separate claim per se. *Id. See also*

*U.S. v. Stein*, 452 F. Supp. 2d 276, 280 (S.D.N.Y. 2006) (finding that the fact that the court could

award money damages did not change the equitable nature of the action).  But there is a key

distinction between *Gulbenkian* and this case.  In *Gulbenkian*, the right to seek specific

performance and the right to damages both accrued at the same time, the event of the alleged

breach.  That is not true here.  As explained above, the Clayton Act carefully sets out the

applicable causes of action, including when each cause of action arises.  So for the reasons stated

---

[6]      The prayer for relief states:

A.  Declaring, finding, adjudging, and decreeing that the agreement of the defendants and American to merge violates Section 7 of the Clayton Antitrust Act.  15 U.S.C. § 18.
B.  Preliminarily enjoining the defendants from consummating their merger during the pendency of this action
C.  Permanently enjoining the defendants from consummating their merger or requiring divestiture.
D.  Awarding to plaintiffs their cost of suit, including a reasonable attorney's fee, as provided by Section 16 of the Clayton Antitrust Act. 15 U.S.C. § 26
E.  Granting to plaintiffs such other and further relief to which they may be entitled and which the Court finds to be just and appropriate.

*See,* Orig. Compl. at 25-26.

above, it is difficult to construe this catch-all language as waiving a right to damages that had not yet accrued under the substantive antitrust law.

Having rejected Defendants' arguments on Rule 38, the Court turns to those under Rule 39.[7] *See* Fed. R. Civ. Pr. 39(a) (where jury has been demanded, it can nonetheless be waived). Defendants argue that certain statements by Plaintiffs' counsel at prior hearings constitute an oral waiver because they are "clear and unequivocal." [8]  Opp. ¶¶ 3, 15, 38, 39.  *See Royal American Managers, Inc. v. IRC Holding Corp.* 885 F.2d 1011, 1018 (2d Cir. 1989).  But such statements were made in the context of the pre-merger rights of the Plaintiffs.  Indeed, Plaintiffs at that time were seeking a trial before consummation of the merger.  Thus, Plaintiffs did not have a jury right to either demand or waive, and Rule 39(a) could not apply in these circumstances. Accordingly, the Court rejects Defendants' argument that these statements constitute a waiver under Rule 39, given the posture of the case at that time.

## II.    The Request to Amend The Complaint

Having concluded that Plaintiffs have not waived their right to assert a damages claim and the related jury demand, the Court now turns to whether the PAC satisfies the applicable legal standards for amendment.  A party may amend its pleading as a matter of course within the time limits imposed by Rule 15(a)(1).  When a party seeks to amend its pleadings outside of the prescribed time frames, the opposing party must consent or the party must obtain leave of the

---

[7]    While Defendants do not cite to Rule 39 itself, the cases they cite regarding the purported oral waiver are all cases applying Rule 39(a).

[8]    *See, e.g.,* Sept. 12 Hr'g. Tr. at 88:25, 89:1-3

THE COURT: "[T]he case will be here for all purposes, and so you consent to this court resolving the matter on the merits for purposes of any objections you could have as to that?
MR. ALIOTO:  "Yes, Your Honor."

MR. ALIOTO: "It is, in fact, your Honor, a bench trial."  *Id.* at 105:9-10.

court.  Fed. R. Civ. P. 15(a)(2).  The decision to grant or deny a motion to amend rests within the "sound discretion of the trial court."  *Adelphia Recovery Trust v. FPL Group, Inc.* (*In re Adelphia Commc'ns Corp.*), 452 B.R. 484, 489 (Bankr. S.D.N.Y. 2011).  "The court should freely give leave when justice so requires."  *Id.*  The standard under Rule 15(a)(2) is generally lenient, and "this mandate is to be heeded."  *See Foman v. Davis,* 371 U.S. 178, 182 (1962).  But a court should not grant leave to amend the complaint if any one of the following four factors is present:  (1) the moving party acted in bad faith; (2) there would be prejudice to the opposing party; (3) there has been undue delay in bringing the motion; or (4) the proposed amendment would be futile.  *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.),* 503 B.R. 239, 340 (Bankr. S.D.N.Y. 2013) (citing *Foman*, 371 U.S. at 182).  Although the presence of any one of these factors can be sufficient to deny a motion to amend the complaint, the Defendants argue that all of them are present.

The Defendants' arguments regarding bad faith, prejudice, and undue delay can be easily rejected.  As to prejudice and bad faith, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  The Second Circuit in *AEP* explained that an amendment may be prejudicial when, among other things, it would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute."  *Id.*  "Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  In *Ruotolo*, the Second

16

Circuit found undue prejudice where the plaintiff sought leave to amend after judgment had

already been entered against him.  *Id*.  In *Tronox*, the proposed amendment was deemed

prejudicial where the parties had already expended millions of dollars preparing for trial, had

conducted a 34-day trial already, and had not conducted any discovery on the proposed amended

claim.  *Tronox*, 503 B.R. at 288.  By contrast, the Second Circuit found that delay was not

unduly prejudicial in *Fluor* because the amended claim was "obviously one of the objects of

discovery and related closely to the original claim  . . . ."  654 F.2d at 856.  In reaching its

conclusion, the court also noted that no trial date had been set and no party had moved for

summary judgment.  *Id.*

     The Defendants argue that the Plaintiffs' request for a jury trial is in bad faith and reflects

a gamesmanship approach imposing prejudice upon the Defendants.  Def. Opp. ¶¶ 1, 42-44.[9]

But the Court has already found that Plaintiffs' damages claim—and resulting right to a jury—

did not arise until after the merger was consummated.  Indeed, the Defendants themselves

recognized the existence of other relief once the merger closed.  During litigation on the TRO

Motion, for example, the Defendants explicitly conceded that a claim for money damages—the

trigger for the jury demand here—was an alternative remedy for the antitrust violation alleged by

Plaintiffs.  TRO Reply ¶¶ 58-61 (ECF No. 64) (arguing that claimed harm of increased ticket

prices was not irreparable for purposes of TRO because it is compensable under Section 4 of

Clayton Act); *cf.* Nov. 25 Hr'g. Tr. at 69:6-20.[10]  Having suggested the possible remedy of

---

[9]     The Defendants raise the bad faith and prejudice arguments specifically with respect to the Plaintiffs' jury demand amendment.  Nonetheless, the Court will consider these arguments with regard to the addition of the damages claim because the jury demand only arises if the proposed treble damages amendment is permitted.

[10]     As Defendants' counsel stated: "What Mr. Alioto is really saying implicitly is that he doesn't accept that there is any remedy unless you can close a merger.  And as we've discussed in our brief, Your Honor, we just fundamentally disagree with that.  There's lots of other remedial powers that Courts have.  Post-closing relief happens all the time…."  Nov. 25 Hr'g. Tr. at 69:6-11.

17

Section 4 damages themselves, the Defendants are hard-pressed to argue that such an amendment, at this stage, would unduly prejudice them.  Much like in *Fluor*, the amended claim for Section 4 damages is closely related to the original Section 7 claim.  The amendment comes well before the "eve of trial."  The parties have commenced discovery, but have not yet concluded it.  In light of these circumstances, the Defendants have not shown that amendment would unduly prejudice them by requiring significant resources spent on additional discovery or by significantly delaying resolution of the dispute.

Absent a showing of bad faith or undue prejudice, mere delay does not provide a basis for a district court to deny the right to amend.  *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) (citing *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973)); *Middle Atlantic Utilities Co. v. S.M.W. Dev. Co.,* 392 F.2d 380, 384 (2d Cir. 1968).  But after "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay."  *McGee v. Dunn,* 940 F. Supp. 2d 93, 108 (S.D.N.Y. 2013) (citations omitted).  In *McGee*, the plaintiff sought leave to amend the complaint, by adding allegations three years after the original complaint was filed.  *Id.* at 109.[11]  By contrast, the Plaintiffs filed this Motion approximately 45 days after the denial of the TRO Motion, and approximately five months after the filing of the initial complaint.  The Motion was filed shortly after the consummation of the merger.  The Defendants have not sufficiently shown that the Plaintiffs unduly delayed the filing of the Motion.  As there is no showing of bad faith or prejudice here,

---

[11]    The Court in *McGee* denied the plaintiff's motion to amend the complaint based not only on the three-year delay, but also the plaintiff's failure to file the proposed amended complaint with his motion.  *See* 940 F. Supp. 2d at 109-10.

18

the mere delay in filing the Motion is not sufficient grounds to deny amendment to the Complaint.

Having dispensed with the other factors, the Court turns to the Defendants' futility argument. It is well established that leave to amend should be denied if the amendment would be futile. *Houston Pipeline Co. LP v. Enron Corp.* (*In re Enron Corp.*) 367 B.R. 373, 382 (Bankr. S.D.N.Y. 2007) (motion for leave to amend denied because defendants were able to establish that plaintiffs' new claims were barred by contractual estoppel). "An amendment is futile when the proposed changes would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Enron*, 367 B.R. 373, 382 (Bankr. S.D.N.Y. 2007); *see also Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990). The party opposing an amendment has the burden of establishing that a proposed amendment would be futile. *Velez v. Fogarty*, 2008 U.S. Dist. LEXIS 96999, at *9 (S.D.N.Y. Nov. 20, 2008) (citations omitted).

When a defendant objects to a proposed amended complaint, the court may scrutinize that complaint as if it were subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* (citing *Journal Publ'g Co. v. American Home Assur. Co.,* 771 F. Supp. 632, 635 (S.D.N.Y. 1991)). In such a circumstance, the court must accept the facts alleged by the plaintiff as true and construe them in the light most favorable to the defendants. *See Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 U.S. Dist. LEXIS 4931, at *10 (S.D.N.Y. Jan. 6, 2014). Conversely, if the amendments are at least colorable "especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment." *Id.* (quoting *Cinelli v. Oppenheim-Ephratah Centr. Sch. Dist.,* 2008 U.S. Dist. LEXIS 1417, at *1 (N.D.N.Y. Jan. 7, 2008)). Under Rule 12(b)(6), a court looks to whether a plaintiff has plead "enough facts to state a claim to relief that is plausible on its face."

19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court must proceed "on the assumption that all the allegations in the complaint are true."  *Id.* at 555.  Taken as true, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Id.* at 678.  "However, this does not mean that a claim must contain 'detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss."  *Eastman Chem. Co. v. Nestlé Waters Mgmt. & Tech.,* 2012 U.S. Dist. LEXIS 141281, at *13-14 (S.D.N.Y. Sept. 28, 2012) (citing *Talley v. Brentwood Union Free Sch. Dist.,* 2009 U.S. Dist. LEXIS 5357, at *11-12 (E.D.N.Y. June 24, 2009)).  The court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief."  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

Section 4 of the Clayton Act provides for the recovery of treble damages as a remedy for an antitrust violation.  *See* 15 U.S.C. § 15.  A private party may sue under Section 4 if he can show:  (1) a violation of the "antitrust laws"; (2) an injury to his business or property; and (3) a causal relationship between the antitrust violation and his injury.  *See, e.g., Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994).  Section 4 requires a more rigorous standing requirement than that of Section 16.  *See Am. Med. Ass'n v. United Healthcare Corp*., 588 F.Supp. 2d 432, 448-49 (S.D.N.Y. 2008).  Where Section 16 requires only alleged threatened loss or damage, Section 4 plaintiffs must plead actual antitrust injury.  *Id.*  As the Supreme Court explained in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986),

> The treble-damages remedy, if afforded to "every person tangentially affected by an antitrust violation or for all injuries that might conceivably be traced to an antitrust violation, would open the door to duplicative recoveries and multiple lawsuits.  In order to protect against multiple lawsuits and duplicative recoveries, courts should examine other factors in addition to antitrust injury,

20

> such as the potential for duplicative recovery, the complexity of apportioning damages, and the existence of other parties that have been more directly harmed, to determine whether a party is the proper plaintiff under [Section] 4.

*Id.* at 111 (quotations omitted).  "[A] showing of antitrust injury is necessary, but not always sufficient, to establish standing under [Section] 4 [of the Clayton Act], because a party may have suffered antitrust injury but may not be a proper plaintiff under [Section] 4 for other reasons."

*Am. Med. Ass'n*, 588 F.Supp. 2d at 448 (quoting *Cargill*, 479 U.S. at 110 n.5).[12]

"At the pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount."  *Kopperl v. Bain*, 2010 U.S. Dist. LEXIS 89195, at *10-11 (D. Conn. Aug. 30, 2010).  The court in *Kopperl* dismissed the defendant's counterclaims for lack of "specific allegations, on any theory of recovery, with respect to the nature of those damages or their amount."  *Id.*

The Plaintiffs here fail to allege an actual injury that they have suffered.  For example, Plaintiffs claim that "public reports show that air service is being eliminated as a result of Defendants' merger, including to Reno-Tahoe, Seattle, Portland, Jackson, Branson, Key West, Louisville, Dayton, San Antonio, New Orleans, Orlando, Tampa Bay, Nashville, and Chicago Midway."  Resp. at ¶ 31 (citing PAC ¶¶ 110-111).  Paragraph 111, one of the proposed

---

[12]    A party may suffer antitrust injury but still lack antitrust standing.  *See Cargill*, 479 U.S. at 110 n.5. Antitrust standing is distinct from the constitutional standing requirement.  *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31.  While harm to the antitrust plaintiff is sufficient to satisfy constitutional standing, a court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action.  *Id.*  In considering whether a plaintiff is such a proper party, courts consider the directness of the injury, whether damages are speculative, and whether there is potential for duplicative recovery.  *See Cargill*, 479 U.S. at 110 n.5; *AMA v. United Healthcare Corp.*, 588 F.Supp. 2d 432, 448 (S.D.N.Y. 2008).  Because Plaintiffs have failed to show even antitrust injury, the Court need not address the issue of antitrust standing at this time.

amendments to the complaint, alleges reduction of flights at the Reno-Tahoe International

Airport and further alleges that other airlines have announced *future* reductions to be made at

other airports.  PAC ¶ 111.  But the Plaintiffs do not elaborate on any of these alleged harms.

Importantly, nowhere does the PAC connect the alleged harms to the Plaintiffs.  In fact, it

provides scant information about the named plaintiffs.  The PAC sets forth the hometowns of

each plaintiff.  *See* PAC ¶ 9.  But the only other real description of the plaintiffs states that they

are

> individuals who are passengers and travel agents who have
> purchased airline tickets from defendants in the past and who are
> expected to do so in the future.  They are threatened with losses . . .
> in the form of significant and substantial threats of higher prices
> for fares, diminished service and loss of flights, curtailment of
> capacity of aircraft and available seats, deterioration of quality of
> service, and lessening of competition . . . .

PAC ¶ 5.  But this fails to allege *any* actual injury to the Plaintiffs for the purposes of treble

damages, which would be "sustained during the pendency of defendants' merger prior to an

order of divestiture."  PAC at 41.  At the February 13, 2014 hearing on this Motion, Plaintiffs'

counsel agreed that a pleading for injury requires allegations that *something* happened.  Feb. 13

Hr'g Tr. at 31:20-24 (ECF No. 100) ("Under Section 4, you establish it that you're the one that

either purchased tickets that were higher than they otherwise would've been  . . . or that you have

been denied availability . . . .").  Yet the PAC is devoid of any such allegations.  For example,

Plaintiffs have not alleged what types of flights are taken, which airports are utilized, or how

often flights are taken.  In fact, many allegations in the PAC refer to harm to the general public

or to "millions of consumers," *see, e.g.,* PAC ¶ 153, rather than any specific harm to these

individual plaintiffs.  Much like the defendant's counterclaims in *Kopperl*, the Plaintiffs here

have failed to make any specific allegations regarding any theory of recovery for Section 4

damages. For that reason, the amendment to the complaint would not survive a motion to dismiss pursuant to Rule 12(b)(6). In other words, the amendments would be futile and should therefore be denied.

It should come as no surprise to the Plaintiffs that the complaint, even as amended, lacks specificity regarding the injury to the named plaintiffs. The Court identified this concern months ago when considering the Plaintiffs' TRO Motion. At the November 25, 2013 hearing on the TRO Motion, for example, the Court inquired about the alleged anti-competitive effects on the Plaintiffs. The only responses offered by Plaintiffs' counsel was that the Plaintiffs' interrogatory responses, which were never filed with this Court, addressed the potential impact upon the Plaintiffs. Nov. 25 Hr'g Tr. at 36:16-25 (ECF No. 79). The Court also noted this problem in its written decision on the TRO Motion. *See* TRO Opinion at 12 ("The Court has no evidence whatsoever regarding who the Plaintiffs are, what the nature of their interest in the airline industry is, or how they will be individually harmed by the proposed merger."). Moreover, the Court's TRO decision quoted the *Malaney* decision, which stated, "the Court need only 'consider those injuries plaintiffs advance that are personal to them . . . and cannot consider any injuries that plaintiffs allege would be suffered by the general air carrier flying public as a whole.'" TRO Opinion at 12 (citing *Malaney v. UAL Corp.*, 2010 U.S. Dist. LEXIS 106049, at *46 (N.D. Cal. Sept. 27, 2010)).[13]

---

[13] While not germane to the Court's ruling today on the Motion, the Court notes that the Plaintiffs have failed to amend the complaint to address other issues identified in the TRO Opinion. *See* TRO Opinion at 18-21 (noting, among other things, difficulties with Plaintiffs' discussion of market share, the Herfindahl-Hirschman Index, failure to address the merger in light of the DOJ Settlement, and neglecting to address specific city-pairs consistent with generally accepted airline antitrust analysis).

### III.    The Preliminary Injunction Request

Finally, the Motion purports to seek to add a request for "a preliminary injunction requiring during the pendency of this action that the defendants hold separate and not commingle their two businesses that have been combined pursuant to their merger, so that divestiture may be expeditiously and effectively accomplished following trial on the merits and judgment in plaintiff's favor."  PAC at 41, Prayer for Relief B.  While Plaintiffs defended this proposed new language in their reply brief, *see* Pl.'s Resp. at ¶ 44, they clarified at the hearing on this Motion that they were not seeking at this time to add any request for injunctive relief pending trial.  *See* Feb. 13Hr'g. Tr. at 37:11-12, 38:10-11 (Plaintiffs' counsel stating that this new relief sought was really intended for the Court's convenience); *id.* at 37:9-10, 37:14-15 (Plaintiffs' counsel clarifying that the language "during the pendency of the case" is intended to mean "during the pendency of the trial,"  and that the relief sought is "damages and divestiture, that's what I am asking for . . . .); *see* Pl.'s Resp. ¶44 ("If, as discovery and litigation progresses, it should appear that the full integration of Defendants' businesses will prejudice the issuance of an ultimate order of divestiture, Plaintiffs have reserved their right to move for a preliminary injunction to continue to have the businesses' assets held separate."); *see also* Feb 13 Hr'g. Tr. 45:7-13 (Defendants' counsel stating that "the request for the preliminary injunctive relief . . . we think was already resolved . . ." and "it sounds like from what counsel stated earlier that in response to Your Honor's questions, that the preliminary injunctive relief may be off the table now that they're not seeking that as a separate matter through the pendency of the next few months, which is fine.")

Given the representations of Plaintiffs' counsel, the Court considers the Plaintiffs to have abandoned their request to add language seeking a preliminary injunction beyond the request for divestiture that is already part of the PAC.[14]

## **CONCLUSION**

For the reasons set forth above, the Motion to Amend is granted in part and denied in part.  The Defendants are directed to settle an order on three days' notice.


Dated: New York, New York
　　　　March 14, 2014



　　　　　　　　　　　　　　　　　　　　**/s/ Sean H. Lane**
　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

---

[14]　　　Of course, the Court previously issued a detailed decision denying Plaintiff's motion for a temporary restraining order that sought to enjoin the consummation of the Merger. *See Fjord v. AMR Corp.*, 502 B.R. 23.   The relief sought by the TRO Motion appears to be essentially the same as the relief sought by the "hold separate" injunction contained in the PAC.  See Feb. 13 Hr'g. Tr. at 34:14-25, 35:1-2, 36:1-15.