**EXHIBIT A**

Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 4   In the Matter of:

 5   AMR CORPORATION,                    Case No. 11-15463 (SHL)

 6            Debtor.

 7   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 8   FJORD, ET AL.,

 9            Plaintiffs,

10      v.                               Adv. No. 13-01392 (SHL)

11   AMR CORPORATION, ET AL.,

12            Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                 U.S. Bankruptcy Court

15                 One Bowling Green

16                 New York, New York 10004

17                 March 26, 2018

18                 1:48 PM

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25
```

```
 1   Hearing re:  Adversary proceeding: 13-01392-shl Fjord et al

 2   v. AMR Corporation et al; Doc. #136 (Seal) Defendant's

 3   motion to seal certain information in connection with

 4   defendant American Airlines Group Inc.'s motion for summary

 5   judgment

 6

 7   Hearing re:  Adversary proceeding: 13-01392-shl Fjord et al

 8   v. AMR Corporation et al; Doc. #157 (Seal) Defendant's

 9   motion to seal certain information in connection with

10   defendant American Airlines Group Inc.'s opposition to

11   Plaintiffs' cross-motion for summary judgment & reply in

12   support of defendant's motion for summary judgment

13

14   Hearing re:  Doc. #139, #140, #141 Defendant's motion for

15   summary judgment filed on behalf of American Airlines

16

17   Hearing re:  Doc. #160, #161 Defendant's opposition to

18   cross-motion and defendant's reply in support of defendant's

19   motion for summary judgment

20

21   Hearing re:  Doc. #148 (Seal) Plaintiff's motion to seal

22   certain exhibits filed by plaintiffs regarding cross motion

23   for summary judgment

24

25   Hearing re:  Doc. #149, #150, #151, #153, #156 Plaintiff's
```

```
                                                          Page 3
 1   cross-motion for summary judgment and opposition to
 2   defendants' motion for summary judgment
 3
 4   Hearing re:  Doc. #167 Plaintiff's reply in support to of
 5   cross-motion for summary judgment
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25   Transcribed by:  Jamie Gallagher and Sherri Breach
```

```
 1   A P P E A R A N C E S :

 2   LATHAM & WATKINS LLP

 3        Attorneys for American Airlines

 4        505 Montgomery Street

 5        Suite 2000

 6        San Francisco, CA 94111

 7

 8   BY:  DANIEL M. WALL, ESQ.

 9        SADIK HUSENY, ESQ.

10

11   ALIOTO LAW FIRM

12        Attorneys for the Plaintiffs

13        One Sansome Street

14        25th Floor

15        San Francisco, CA 94104

16

17   BY:  THERESA D. MOORE, ESQ.

18        JOSEPH M. ALIOTO, ESQ.

19        JAMIE MILLER, ESQ.

20

21

22

23

24

25
```

```
 1   NEDEAU LAW FIRM
 2        Attorney for the Plaintiffs
 3        154 Baker Street
 4        San Francisco, CA 94117
 5
 6   BY:   CHRISTOPHER A. NEDEAU, ESQ.
 7
 8   MESSINA LAW FIRM
 9        Attorneys for the Plaintiffs
10        961 Holmdel Road
11        Holmdel, NJ 07733
12
13   BY:   GIL D. MESSINA, ESQ.
14         TIMOTHY A.C. MAY, ESQ.
15
16
17
18
19
20
21
22
23
24
25
```

1                P R O C E E D I N G S
2            THE COURT:  Good afternoon.  Please be seated.
3    We're here this afternoon for summary judgment arguments in
4    the adversary proceeding that was brought up by civil
5    antitrust plaintiffs, AMR Corporation, et al.  That's
6    adversary 13-1392.  So let me get appearances from counsel,
7    starting on this side of the room and we can work our way
8    across.
9            MR. ALIOTO:  May it please Your Honor, Joseph M.
10   Alioto for the plaintiffs.
11           MS. MILLER:  Jamie Miller for the plaintiffs.
12           MR. MESSINA:  Good afternoon, Your Honor, Gil
13   Messina for the plaintiffs.
14           MS. MOORE:  Theresa Moore with the Alioto Law Firm
15   for the plaintiffs.
16           MR. NEDEAU:  Christopher Nedeau of Nedeau Law Firm
17   for the plaintiffs.
18           MR. MAY:  Timothy May.  Messina Law Firm for the
19   plaintiffs, Your Honor.
20           THE COURT:  All right.  Good afternoon.
21           MR. WALL:  Good afternoon, Your Honor.  Dan Wall,
22   Latham & Watkins for American Airlines.
23           MR. HUSENY:  Good afternoon, Your Honor.  Sadik
24   Huseny, Latham & Watkins for American Airlines.
25           THE COURT:  All right.  Good afternoon.  All

13-01392-shl    Doc 174-1    Filed 04/17/18    Entered 04/17/18 23:43:25    Exhibit
                        Exhibit A    Pg 8 of 20

                                                                     Page 11

```
 1   but rather put both those options on the table.
 2             MR. WALL:  Yeah.
 3             THE COURT:  So certainly there seems to be case
 4   law that talks about market as a way of addressing summary
 5   judgment and I think your point is that it's the sort of
 6   competitive effects and this sort of burden shifting --
 7   their burden that's a bit more unusual or particularly
 8   unusual in this case.  Am I getting that right?
 9             MR. WALL:  Right.  So I think that the -- sort of
10   the orthodox view under the antitrust laws today is that if
11   you have a well-defined market, or just say (indiscernible)
12   of a well-defined market and you have the concentration
13   numbers that are of a certain dimension and change as a
14   result of the merger, then that can but not necessarily does
15   move the plaintiff to the next level.
16             Because what it also needs is some validation of
17   the numbers as having a proper sort of inferential kit, to
18   use a very non-technical term.  And let's just take a -- I
19   think it's a great example here is if you take the numbers
20   that Dr. Lundgren (ph) uses in -- you know, one of the
21   things he did is he took the DOJ list of city pairs and he
22   provides some information about price increases that
23   occurred in those markets.
24             Well, if you take the -- if you look through that
25   carefully and you take the top five -- the numbers one
```

                        Veritext Legal Solutions
212-267-6868              www.veritext.com              516-608-2400

1  through five of the DOJ ranking of the greatest
2  concentration increases in a city pair as a result of this
3  merger --
4            THE COURT:  Right.
5            MR. WALL:  -- right, only one of those five appear
6  on his list of the ones where there was a price increase
7  that they used as some proof of anything.  In four of the
8  five, it didn't make the list of 785 because there wasn't,
9  apparently by his calculations, a price increase.  And he
10 only reported the price increases.
11           So right then and there you say, well, what do I
12 get then out of looking at these rather arbitrarily chosen
13 combinations of city pairs (indiscernible) all members and
14 price increases?  None of it seems to allow for any kind of
15 valid inference that a problem results because in four or
16 five top cases, there's no reported price increase.
17           To me, as an antitrust lawyer, the way I looked at
18 that is you could -- either looked at that as questioning
19 the market definition, that maybe this market definition
20 isn't quite reliable just to take city pairs at origins and
21 destinations and just -- without anything more, call it a
22 market.  Or you could also say I'll presume it is, but now I
23 don't think I can just presume adverse competitor effects
24 because I see evidence in the record, which suggests to me
25 that it may or may not result in any adverse effect.

Page 13

1        And of course, in addition to that, we have Dr.
2   Carlton's work, which actually focused on the three to two's
3   and the two to one's, so the most concentrated markets, and
4   showed that by and large, those were the ones that after the
5   mergers, there were -- there was new entry, capacity
6   expansion, and lower prices.  So it doesn't -- all of that
7   is just a long winded way of saying, so you just can't stop
8   there.  It's not legally sufficient to stop there.
9        It doesn't mean they lose unless they don't have
10  anything more after that and that's our ultimate point is
11  that they don't.
12       THE COURT:  Could you say that what should happen
13  is that -- for purposes of whether you call it a motion in
14  limine or a summary judgment motion, that you essentially
15  say looking at what's in front of that Court, that the
16  Court's going to define what's appropriate to go to trial
17  and it's that some smaller subset, that is whether it's the
18  markets where individuals have flown and is established in
19  the declarations, or it's the 785.
20       MR. WALL:  Right.
21       THE COURT:  What would be your response to that
22  approach?
23       MR. WALL:  So what -- I think that's, in a sense,
24  the most important question here because I think that the
25  way that one would actually want this done, or should want

1   and maybe this is a question for you -- how many city pairs
2   are an issue in those declarations of actual flight?
3           MR. HUSENY:  Right.  What we've done, Your Honor,
4   in our reply brief.  I think it was on page 27 through 28.
5           THE COURT:  Right.
6           MR. HUSENY:  We need -- we first in our briefing
7   submitted a chart that laid out the various allegations and
8   tried to put the allegations from the 20 declarations
9   together in a way that made sense so that we could sort of
10  group them categorically with respect to the arguments we
11  thought applied and why the various allegations of harm
12  weren't actually cognizable.
13          On page 27, 28 of our reply, which is docket
14  number 160, we laid out there -- the few allegations from
15  the plaintiff that after parsing through all of the
16  declaration statements and the testimony at deposition,
17  we've got a total of 7 plaintiffs with 8 allegations
18  covering 11 city pairs that we think, putting all of those
19  together, are actual named plaintiffs who claimed that they
20  were harmed in some capacity with a specific claim of injury
21  with respect to a city pair that's in the 785 pairs list
22  that Dr. Lundgren submitted.
23          THE COURT:  All right.  And I saw that that's
24  something that the plaintiffs, I guess they had the last
25  word in their reply memorandum, sort of address the seven --

Page 28

1  these seven plaintiffs on page 17.  Does any of that change
2  your view as to that analysis?
3              MR. HUSENY:  So it does not.  You know, they also
4  submitted some charts as well in response to our charts.
5  There is one that they submitted, which I think is docket
6  number 167.3 and I think that is their largest compilation,
7  frankly, of plaintiffs -- named plaintiffs who actually have
8  some sort of allegation with respect to a city pair.
9              If you look at that chart, I think it was in --
10  attached to Mr. Alioto's declaration, there's about 59
11  separate line entries.  If you de-duplicate out, there's
12  about 50 to 55 different city pair routes that they think
13  these plaintiffs have made allegations about.  So 50 to our
14  11, the differential is -- of the 40 or so is that they
15  listed in that chart every city pair that was mentioned in
16  any capacity in the declarations, we listed in our 11 the
17  city pair routes where they actually said that there was
18  some harm or injury.
19              They, for example, have declarations where
20  somebody says over the last 30 years, I've flown these 15
21  routes.  And they've added all 15 of those routes to that
22  chart as -- under the theory and the belief that that is
23  enough to allege something specific to the city paired
24  market.
25              We think that you can't just say within the last

Page 29

1    30 years you've flown in X, Y, Z city paired markets.  You
2    actually need some concrete, you know, specialized and
3    significant threat of injury that you have alleged, and at
4    this point shown and proven since we're at summary judgment,
5    and that they've only done that at best with respect to the
6    11.  And in our reply brief into route, we then say, well,
7    even for those 11 when you actually look at it, there's some
8    allegation but there's no causality.  It's an international
9    route.  There's some other problem even when you get to the
10   11.
11             But I think the fair analysis is 11 to 50, 55 or
12   so is what plaintiffs are claiming.
13             THE COURT:  All right.  Thank you.  All right.  I
14   did promise we'd hop around a little bit, so again thank you
15   in advance, everyone, for being willing to do that.  I just
16   remember what it's like to be standing there and having a
17   Judge do violence to my presentation.  So --
18             MR. WALL:  It's not a problem, Your Honor.
19             THE COURT:  So I see that there was no deposition
20   of the plaintiff's expert and I assume that that was because
21   in your view that dovetails with your notion about what was
22   presented or not presented in terms of, you know,
23   anticompetitive analysis of fact, is that right?
24             MR. WALL:  There's that and there's a procedural
25   claim.  So we didn't get an expert report by the cutoff date

Page 30

```
 1   from the plaintiffs.  And then it was subsequent to that
 2   that they said they wanted to put in the city pairs and the
 3   HHI's.  And we agreed to do that.  And we laid out the
 4   history of this in our brief.  It's a long footnote in it
 5   about it.  And that understanding was initially honored and
 6   as a result, it just -- it didn't seem like there was any
 7   point in taking a deposition.  I mean, just -- honestly,
 8   just no (indiscernible).
 9             The numbers come from a DOT database.  They are
10   what they are.  And we didn't have any questions about what
11   the columns meant and things like that.  So we didn't take
12   the deposition.
13             In opposition to a summary judgment motion, they
14   then in fact go further and put in this analysis of the so-
15   called price increases.  And at that point, you know, first
16   of all, you (indiscernible) at this point.  We don't think
17   that that was consistent with our agreement.  And we've
18   asked you not to consider that as a result of that.  But we
19   haven't -- didn't take a deposition about that just because
20   of where we were in the process.  That's all.
21             THE COURT:  All right.  Anything else that you
22   wanted to get to?  I have one or two other questions.
23             MR. WALL:  No, Your Honor.
24             THE COURT:  Well, then let me ask you about --
25   speaking of the tail wagging the dog, there's a claim for
```

1           So I'm -- I will say I'm not comfortable going to
2    trial with sort of a, well, we -- you know, people may get
3    up and start talking, right?  So that's not the way it
4    works.  Summary judgment is meant to say, come forward with
5    your evidence.  It's in --
6           MR. NEDEAU:  Your Honor, I --
7           THE COURT:  Right.  So the -- so for city pairs I
8    understand it to be 55.  I also understand that Mr. Alioto
9    has made the argument that there's a national market which
10   is a separate market.  So I understand that.  So --
11          MR. NEDEAU:  What I --
12          THE COURT:  -- I'm just trying --
13          MR. NEDEAU:  Right.  But the reason --
14          THE COURT:  -- I'm just trying to drill down.
15          MR. NEDEAU:  -- I'm replying, Your Honor, we
16   wouldn't think it would be proper to exclude, which would be
17   the next step, the testimony of one of our plaintiffs who is
18   testifying about air travel on American or expense on
19   American Airlines that didn't include one of these city
20   pairs.  They're still competent witnesses and capable of
21   talking --
22          THE COURT:  But if I didn't get it on summary
23   judgment where it was told to identify what your market is
24   and what your constitutional injury is, then why would it be
25   appropriate to hear it at trial for the first time?

1            MR. NEDEAU:  Well, Your Honor, I believe summary
2    judgment is a situation where our job is to raise triable
3    issues of fact and if we raise any we're allowed to proceed
4    to trial.  I'm not sure that I'm not -- it's not in my
5    experience in the last 30 years that summary judgment is a
6    place where you put your case on the record and you're
7    narrowed to that particular case.  We've raised --
8            THE COURT:  Well, it doesn't mean that you're --
9            MR. NEDEAU:  -- a triable issue of fact.
10            THE COURT:  Well, all right.  We may have a
11    difference of opinion in the execution there.  But I
12    understand your answer to the factual question which is all
13    I was asking which is the 55 is the city pairs that are
14    identified.  And, again, that's the subject of a dispute as
15    to relevance, and he says it's too broad and you also have
16    the national market and --
17            MR. NEDEAU:  Well, if I could amend -- elaborate
18    for a moment.
19            The plaintiffs are potential customers on flights
20    all over the country.  So under that theory all seven --
21            THE COURT:  Well, that's the national market
22    though, right, because that's --
23            MR. NEDEAU:  Yeah.  Yeah.  All --
24            THE COURT:  -- every -- that's everything.
25            MR. NEDEAU:  -- 785.  That's right.

```
 1              THE COURT:  Yeah.  No.  I got it.
 2              MR. NEDEAU:  And what's --
 3              THE COURT:  I'm just -- again, my question -- and I
 4   don't mean to beat a dead horse -- I think I've got an
 5   answer to it -- is what specific cities or city pairs are
 6   identified in the declaration and I think I got the answer
 7   which is 55.  I understand Mr. Alioto has made it clear that
 8   he thinks there's a national market.  And I think the papers
 9   in response to the defendants' arguments about market say
10   we're alleging both.  And so I -- I've got that.
11              MR. NEDEAU:  Well, we're simply urging the Court to
12   consider the situation that the plaintiffs in this case are
13   victims.  They've been injured.  They have actual harm.
14   They have potential harm, and they've testified as to past
15   harm.  You have 19 declarations under oath before the Court
16   and there are about 40 plaintiffs so there could be more
17   people at trial to testify about this.
18              And the harm is varied, you know, one of the
19   counsel on the defense talks about a laundry list of
20   complaints.  But that's not really a dignified way to put
21   it.  It's not a laundry list of complaints.  It's a
22   substantial reduction in service to the traveling public
23   and, in particular, to these plaintiffs.  And that is part
24   of the lessening, the substantial lessening of competition.
25   Just as a price rise is.
```

1    HCA case.  It's -- it is a typical Richard Posner decision
2    in its sort of breezy approach to the way that he does
3    things, which I suppose if you have 150 point IQ you can do
4    things like that.
5            But you see the entire discussion that Mr. Alioto
6    quotes is a dicta in which he is basically saying the
7    Federal Trade Commission spent 120 pages outlining the
8    probably anti-competitive effects of this merger.  I suppose
9    they could have just relied on the Supreme Court cases and
10   saved themselves the trouble because they haven't been
11   overruled.  And then his opinion goes on for pages and pages
12   and pages with his own discussion of those economic issues
13   in great depth and great nuance as you would expect from one
14   of the great law and economic scholars of our time.
15           So he does not actually apply the law the way that
16   Mr. Alioto repeatedly said he would apply the law.  He
17   applied it in a way which became over the ensuing 40 years
18   standard.
19           Now I think a good example of this and why,
20   frankly, Mr. (indiscernible) was right.  This is exactly
21   what was going to happen when we filed the summary judgment
22   motion.  We put in a summary judgment motion that
23   anticipated what they were going to say about capacity
24   reduction and what Mr. Horton was going to do and all that
25   kind of stuff.

1            And so Dr. Carlton's expert report that is before
2   you shows you that there have been capacity increases since
3   the merger.  That is the only evidence of that in the
4   summary judgment record, period, end of sentence.  There is
5   no expert testimony from them at all on anything other than
6   putting forward HHI numbers and this pricing thing that they
7   tried to smuggle in at the end which we object to.
8            But they don't have any evidence that anything like
9   a capacity reduction happened, none at all.  This is just a
10  speech that he was going to give.  And if we had a trial
11  you're just going to hear the speech again.  You're not
12  going to have a witness that's going to get on the stand and
13  prove that there was a capacity reduction.
14           THE COURT:  Well, let me ask you.  There's a -- I
15  asked a few questions about reliance on things in other
16  cases or other context.
17           So let me ask you a question about the reliance on
18  statements of Mr. Parker and Mr. Horton, particularly as to
19  the stand-alone plan and what your take is on that.
20           MR. WALL:  So, you know, the stand-alone plan, you
21  -- you know it better than I do.  You saw it.  It was a
22  centerpiece of an effort to remain independent by American
23  Airlines which far be it from being this sort of complicit,
24  you know, conspirator the way that they're put out to be
25  here was opposing the U.S. Airways plan for, you know, much

1   of the time during that proceeding.

2           The question -- yeah, there's a PowerPoint

3   presentation in which there's a suggestion that a 20 percent

4   capacity reduction would cause problems in the industry.  I

5   don't think that there's any probative evidence here that

6   American Airlines, the stand-alone legacy American Airlines

7   had any concrete plans at all to increase capacity by 20

8   percent which would have been a, just a remarkable amount of

9   capacity expansion.  And mind you this is the kind of an

10  industry that if there's a two or three percent capacity

11  expansion in a year, that's a big deal.  That's a big deal.

12  And that's the kind of capacity expansion that we have seen

13  since the merger.

14          But, you know, there's this plan.  The merger

15  occurs.  It is a data point without a doubt in the question

16  of whether the merger causally led to a less competitive

17  environment.  But can it carry his burden of proof alone?

18  Only rhetorically, only as a matter of just sort of shouting

19  out a narrative that says that -- that the merger stopped

20  something from occurring that might have led to a more

21  competitive world.

22          But that's -- but the tense under Section VII has

23  to do with whether the competitive conditions have broken

24  down in a way which over a sustained period of time are

25  going to leave consumers worse off.  That's what it's about.